J-A03036-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERNEST JAMES SNYDER, | : | |
| | : | |
| Appellee | : | No. 1069 WDA 2018 |

Appeal from the Order Entered July 5, 2018
in the Court of Common Pleas of Mercer County
Criminal Division, at No(s): CP-43-CR-0001405-2017

BEFORE:    BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            **FILED APRIL 12, 2019**

The Commonwealth of Pennsylvania appeals from the July 5, 2018 order

which granted the omnibus motion for pre-trial relief filed by Ernest James

Snyder (Snyder).  Upon review, we affirm.

> On August 7, 2017, the complainant[, A.W.] provided a
> statement to Hermitage Police, accusing [Snyder] of various
> criminal acts.  On August 9, 2017, Detective John Miller of the
> Hermitage Police conducted an interrogation of [Snyder] at the
> Meadows Mental Health Facility, where [Snyder] was residing.
> [Snyder] made incriminating statements during the interview.
>
> On August 10, 2017, charges were filed against [Snyder.[1]
> Snyder] requested the appointment of the Mercer County Public
> Defender's Office to represent him. On August 23, 2017, the [trial]
> court appointed the Public Defender to represent [Snyder] in this
> matter.
>
> At [Snyder's] preliminary hearing on August 29, 2017,
> counsel for the parties discussed conducting a polygraph test.  The

---

[1] Specifically, Snyder was charged with several sexual offenses including, *inter
alia*, rape of a child and aggravated indecent assault.

*Retired Senior Judge assigned to the Superior Court.

polygraph interview was subsequently scheduled for October 5, 2017.  Prior to the scheduled interview, defense counsel contacted the District Attorney's office and requested that the interview be postponed because there was a question as to [Snyder's] competency to stand trial and/or make knowing and voluntary statements.  Defense counsel wanted to obtain discovery and conduct an investigation into the competency issue prior to any further interviews by the Commonwealth.

The Commonwealth agreed to defense counsel's request.  However, despite the District Attorney's attempt to postpone the interview, Scott Patterson conducted the polygraph test and interview of [Snyder] at the Mercer County Jail on October 5, 2017 [without defense counsel present.  Snyder] made further incriminating statements at that time.

Opinion, 7/5/2018, at 1-2.  As a result of the foregoing, on April 25, 2018, Snyder filed an "Omnibus Motion for Pre-trial Relief for Defendant's Motion *in Limine* to Suppress Statements" (Motion to Suppress).  Therein, Snyder alleged, *inter alia*, that the statements made during the polygraph examination should be suppressed because the statements were "not made knowingly, intelligently, or voluntarily[,]" and were in violation of his constitutional right to counsel.  Motion to Suppress, 4/25/2018, at 4 (unnumbered).

The Commonwealth filed a response, in which it asserted that the statements made during the polygraph examination should be admissible in their case-in-chief because Snyder was read his **Miranda**[2] rights before the polygraph examination began and Snyder waived his right to counsel.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Response to Snyder's Motion to Suppress, 7/2/2018, at 5-6 (unnumbered). In the alternative, even if the trial court were to suppress the statements for use at trial, the Commonwealth argued the court should permit the Commonwealth and its expert to use Snyder's statements when evaluating Snyder's competency. ***Id.***

No hearing was held on Snyder's motion. Instead, the parties, by consent, agreed to have the trial court review and decide the matter on briefs. Order, 5/10/2018. After consideration of the parties' briefs, the trial court granted Snyder's motion, holding as follows.

> Ensuring that a defendant has the assistance of counsel is a hollow gesture if the defendant cannot rely on that assistance. Where, as here, a defendant has relied upon the assistance of counsel in his interactions with the Commonwealth, and the Commonwealth acts in a manner that specifically invalidates that reliance, it is reasonable to assume that the defendant's faith in the judicial system will have been severely shaken. Under these circumstances, th[e trial court] cannot find that [Snyder] was able to make a knowing, intelligent, and voluntary waiver of his Sixth Amendment right to counsel.

Opinion, 7/5/2018, at 7-8. Additionally, the trial court found that the exclusionary rule prohibited the Commonwealth from using the statements to help formulate its expert's report on Snyder's competency. ***Id.*** at 10 ("Where the exclusionary rule applies, the Commonwealth may not use the evidence

- 3 -

excluded or any other evidence tainted thereby.").  This timely-filed appeal followed.[3]

On appeal, the Commonwealth argues that the trial court erred in granting Snyder's Motion to Suppress.  Commonwealth's Brief at 4.

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings.  In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013) (quotation marks and citations omitted).  With our well-settled standard of review in mind, we examine the Commonwealth's claim on appeal mindful of the following legal principles.

> The Fifth and Sixth Amendments to the United States Constitution both provide criminal defendants with a right to counsel, though their protections differ in various respects. Although the Fifth Amendment does not expressly set forth a right to counsel, the Supreme Court inferred such a right in *Miranda*[, *supra*].  Under *Miranda,* any suspect subject to custodial interrogation, regardless of whether a crime has been charged,

_____

[3] In its notice of appeal, the Commonwealth certified that the July 5, 2018 order handicapped its prosecution, thus permitting appeal pursuant to Pa.R.A.P. 311(d).  Notice of Appeal, 7/20/2018, at 1 (unnumbered).  The Commonwealth complied with Pa.R.A.P. 1925(b).  In lieu of a Pa.R.A.P. 1925(a) opinion, the trial court issued an order relying on its July 6, 2018 opinion.  Order, 8/28/2018.

has a right to have [an] attorney present during questioning if the suspect so requests. Once a defendant invokes his or her Fifth Amendment right to counsel, all questioning must cease. No subsequent interrogation may take place until counsel is present, whether or not the accused has consulted with his attorney.

The Sixth Amendment to the United States Constitution states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings. Interrogation is a critical stage. The purpose of this right is to protec[t] the unaided layman at critical confrontations with his "expert adversary," the government, after the adverse positions of government and defendant have solidified with respect to a particular alleged crime. Because it does not attach until a prosecution is commenced, the Sixth Amendment right to counsel is offense-specific.

In *Kirby v. Illinois*, [406 U.S. 682 (1972)], the United States Supreme Court explained when the Sixth Amendment right to counsel attaches:

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.

As our Supreme Court has clarified, the "initiation of adversary proceedings" can be *via* "formal charge, preliminary hearing, indictment, information, or arraignment." *Commonwealth v. McCoy*, [975 A.2d 586, 590 (Pa. 2009).] As our Supreme Court indicated in *McCoy*, one type of "formal

charge" initiating formal adversary proceedings is the filing of a criminal complaint.

After the Sixth Amendment right to counsel attaches, it does not depend upon any further request by the defendant. In other words, the Sixth Amendment right to counsel is "self-effectuating," in that the accused has no obligation to assert it. The triggering event for attachment of the Sixth Amendment right to counsel is not a defendant's assertion of the right *via* a request for counsel, but is instead, as indicated, the initiation of the judicial proceedings.

A defendant may waive his/her Sixth Amendment right to counsel so long as the waiver is voluntary, knowing, and intelligent. Although a defendant's **Miranda** rights have their source in the Fifth Amendment, a defendant who is admonished with the warnings set forth in **Miranda** has been sufficiently apprised of the nature of his/her Sixth Amendment rights, and thus a waiver of his/her **Miranda** rights may constitute a waiver of both the Fifth and Sixth Amendment rights to counsel.

The determination whether an accused has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case. These circumstances include the background, experience, and conduct of the accused. The government has the burden to prove, by a preponderance of the evidence, that the waiver was the product of a free and deliberate choice rather than intimidation, coercion, or deception and was made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the constitutional rights to counsel have been waived. With respect to constitutional rights, courts should indulge every reasonable presumption against waiver.

*Commonwealth v. Hill*, 42 A.3d 1085, 1090–91 (Pa. Super. 2012), *vacated on other grounds*, 104 A.3d 1220 (Pa. 2014) (footnote and some citations and quotation marks omitted).

In this case, there is no dispute that Snyder's right to counsel had attached and that he was represented by the Public Defender's office at the time of the polygraph examination. Likewise, it is clear that this type of examination fell within the parameters of a "critical stage," to which the Sixth Amendment applies, as the polygraph served the Commonwealth's efforts to elicit information from Snyder. Moreover, and arguably most important, there is no dispute that defense counsel requested, and the Commonwealth agreed, to a postponement of the polygraph examination. Thus, what was left for the trial court to decide when reviewing Snyder's motion was whether Snyder's constitutional rights were violated when the Commonwealth conducted a polygraph examination which was held despite counsel's intervention.

In his Motion to Suppress, Snyder argued that the Commonwealth was prohibited "from initiating contact with [him] without the consent of his counsel." Memorandum in Support of Motion to Suppress, 4/25/2018, at 11 (unnumbered). Moreover, Snyder averred that any waiver made by Snyder could not "be valid or deemed to be a knowing, intelligent, or voluntary waiver when counsel expressly intervened to cancel the scheduled interrogation of her client and [] Snyder did not reinitiate the questioning on his own behalf." *Id.* at 11-12. In response, the Commonwealth asserted Snyder's waiver was valid because it was made after he was informed of his *Miranda* rights by the polygraph examiner. Response to Snyder's Motion to Suppress, 7/2/2018, at 5 (unnumbered) ("[B]ased upon the ability of [Snyder] to waive his Sixth

Amendment right to counsel, the interview conducted by [the polygraph examiner], where [Snyder] admits to the acts alleged by [A.W.], should be allowed in the Commonwealth's case in chief.").

The trial court found that Snyder

relied on [d]efense [c]ounsel to prevent the Commonwealth from conducting the polygraph on October 5, 2017. Despite [d]efense [c]ounsel's efforts, the Commonwealth's agent approached [Snyder] with the intent of conducting the polygraph test. From [Snyder's] perspective, [d]efense [c]ounsel had both failed to prevent the Commonwealth from pushing forward with the polygraph and did not come to his aid during the interrogation. Thus, even when [the polygraph examiner] gave [Snyder] his **Miranda** warnings, [Snyder] had no reason to believe that an assertion of his right to counsel at that time would be honored by the Commonwealth.

Opinion, 7/5/2018, at 7-8. The court continued that the record in this case reflected that

the Commonwealth specifically contravened an agreement with [d]efense [c]ounsel to postpone the custodial interrogation. [Snyder] trusted his counsel to represent his interests with regard to the October 5, 2017[] interview, and the Commonwealth failed to respect that trust. Of course, the Commonwealth could have rejected [Snyder's] request to postpone the polygraph test. In that case, [d]efense [c]ounsel would have informed [Snyder] of the same and presumably would have been available to assist him during the interrogation. But, having agreed, to the postponement, the Commonwealth could not eviscerate [Snyder's] reliance on [d]efense [c]ounsel by failing to honor that agreement.

*Id.*

On appeal, the Commonwealth contends that the trial court's finding that Snyder would have no reason to believe any request for counsel would

be honored when defense counsel failed to postpone the polygraph examination was "not based upon any fact contained in the record. [Snyder] never presented testimony regarding his knowledge that [defense counsel] was attempting to postpone the polygraph examination and the trial court['s] considering [Snyder's] 'perspective' [was] improper conjecture unsupported by any fact." Commonwealth's Brief at 16. Additionally, the Commonwealth avers that there was no evidence to suggest that it "willfully breached the agreement in order to obtain incriminating statements from" Snyder. *Id.*

Upon review of the record, while we agree with the Commonwealth that the record is devoid of any evidence to suggest that Snyder was aware that defense counsel had requested to postpone the polygraph examination, we nonetheless conclude that the suppression of the statements made by Snyder under the foregoing circumstances was warranted.[4] In finding as such, we agree with Snyder that once defense counsel had intervened regarding a scheduled polygraph examination and expressly sought a continuance, upon which the Commonwealth agreed, the Commonwealth was disallowed from initiating the examination without counsel's knowledge. *See Commonwealth v. Franciscus*, 710 A.2d 1112, 1118 (Pa. 1998) ("The Sixth Amendment also imposes on the State an affirmative obligation to respect or

---

[4] "[A]n appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018).

preserve the accused's choice to seek this assistance. We have on several occasions been called upon to clarify the scope of the State's obligation in this regard, and have made clear that, at the very least, **the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.**") (emphasis added). Specifically, with respect to defense counsel's actions, we note that

> [t]he Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. … [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation.

***Maine v. Moulton***, 474 U.S. 159, 176 (1985).

In this case, defense counsel sought specifically a continuance of the polygraph examination on behalf of her client after she became concerned about Snyder's competency. Counsel received an affirmative agreement from the Commonwealth that the examination would be postponed. As such, the Commonwealth was prohibited from circumventing the agreement, and its failure to adhere to the agreement served only to upend the protections

provided to Snyder by the Sixth Amendment. Thus, suppression of these statements for use at trial was proper.[5]

Lastly, we address the Commonwealth's argument that even if the trial court did not err by suppressing Snyder's statements from being used at trial, the court erred by not allowing the Commonwealth to use these statements "for purposes of a competency hearing." Commonwealth's Brief at 19. Specifically, the Commonwealth contends "that there is absolutely no evidence that the Commonwealth willfully violated the agreement to postpone the polygraph examination[,]" and as such, the "trial court's preclusion of [Snyder's] statements from use by the Commonwealth in a competency hearing fails to balance the deterrent effect of the exclusionary rule against the

---

[5] In concluding as such, we find the Commonwealth's citation to **Montejo v. Louisiana**, 566 U.S. 778 (2009) inapplicable in light of our disposition. In **Montejo**, the United States Supreme Court expressly overruled **Michigan v. Jackson**, 475 U.S. 625 (1986) and held that the appointment of counsel did not serve as a presumption that a subsequent waiver of counsel by a defendant at a later police-initiated interrogation was invalid. Of course, "[t]he determination whether an accused has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case." **Hill**, 42 A.3d at 1091.

For the reasons cited *supra*, we need not engage in analysis of whether Snyder made a knowing and voluntary waiver, as we find the Commonwealth's actions breached Snyder's right to rely on counsel to make decisions on his behalf. Regardless, we question whether Snyder, presumably without the knowledge that defense counsel sought to continue the polygraph examination after becoming concerned of Snyder's competency, would have been capable of making a knowing and voluntary waiver of counsel without this pertinent information.

societal costs[,]" since the exclusion of these statements "essentially stifles the Commonwealth's potential prosecution of a very serious sexual offense case." *Id.* at 24-25.

We are cognizant that there is little in the record to suggest that the Commonwealth engaged in willful misconduct[6] when the polygraph examination was administered despite an agreement to postpone. Nevertheless, it is well settled that "no good faith exception to the exclusionary rule exists under Pennsylvania law." ***Commonwealth v. Hopkins***, 164 A.3d 1133, 1138 (Pa. 2017). ***See also Commonwealth v. Edmunds***, 586 A.2d 887, 899 (Pa. 1991) (rejecting the federal good faith exception to the exclusionary rule as it would emasculate essential rights guaranteed by the Pennsylvania Constitution). "Evidence constitutes fruit of the poisonous tree, and must be suppressed, if it was obtained by 'exploitation' of the illegality … and so long as the taint of that illegality has not been purged." ***Commonwealth v. Shabezz***, 166 A.3d 278, 290 (Pa. 2017).

Here, the statements made by Snyder were "a direct and immediate consequence" of the polygraph examination that was held without Snyder's

---

[6] In Snyder's Motion to Suppress, Snyder attached an email sent from the Assistant District Attorney to an employee in the District Attorney's office requesting that the polygraph examination be continued. The employee acknowledged receipt of the email by responding and stating that the polygraph could be postponed to a later date. **See** Motion to Suppress, 4/25/2018, at Exhibit A.

counsel present, and therefore, using the statements in the competency hearing would constitute "an 'exploitation' of the constitutional violation." **Id.** Additionally, there is no *indicia* in the record to suggest that the taint of that illegality could be purged. **See id.** ("None of the traditional circumstances that have been found to purge the taint of an unconstitutional act, *i.e.* attenuation, inevitable discovery, independent source, or some intervening act or event, [] are present in this case."). In light of the foregoing, because the suppressed statements cannot be purged of taint, pursuant to the exclusionary rule, they cannot be used as evidence against Snyder.

In sum, because it was appropriate under the circumstances to suppress Snyder's statements, the trial court properly granted Snyder's Motion to Suppress. Thus, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2019